**SECOND AMENDMENT TO LOAN AGREEMENT AND OTHER LOAN DOCUMENTS**

between

**SMHG VILLAGE DEVELOPMENT LLC,**

**a Delaware limited liability company,**

**as Borrower**

and

**SUMMIT VILLAGE DEVELOPMENT LENDER 1, LLC,**

**a Delaware limited liability company,**

**as Lender**

**Dated as of October 31, 2017**

104323689

CONFIDENTIAL INFORMATION                    SMHG002856

## SECOND AMENDMENT TO LOAN AGREEMENT
## AND OTHER LOAN DOCUMENTS

THIS SECOND AMENDMENT TO LOAN AGREEMENT AND OTHER LOAN DOCUMENTS (this "Amendment") is dated as of October 31, 2017, by and between SMHG VILLAGE DEVELOPMENT LLC, a Delaware limited liability company ("Borrower"), and SUMMIT VILLAGE DEVELOPMENT LENDER 1, LLC, a Delaware limited liability company ("Lender").

## RECITALS:

Borrower and Lender entered into that certain Loan Agreement, dated as of June 28, 2016, as amended pursuant to the First Amendment to Loan Agreement and Other Loan Documents dated as of September 23, 2016 (collectively, the "Loan Agreement"), whereby Lender made a secured loan (the "Loan") to Borrower in the aggregate principal amount of One-Hundred Twenty Million and 00/100 Dollars ($120,000,000.00) evidenced by the Note. Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Loan Agreement.

Borrower and Lender have agreed to modify certain provisions of the Loan Documents in the manner hereinafter set forth.

NOW, THEREFORE, Borrower and Lender desire to enter into this Amendment in order to modify certain provisions of the Loan Documents.  This Amendment is a "writing" referred to in Section 9.13 of the Loan Agreement.

## AGREEMENTS:

Accordingly, in consideration of the mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto covenant and agree as follows:

1.    The following definition shall be added to Section 1.1 of the Loan Agreement:

"**Shortfall Guaranty**" means that certain Amended and Restated Guaranty Agreement, dated as October 31, 2017, executed by Guarantor in favor of Lender, as the same may be amended, modified, renewed or restated from time to time.

2.    The following definition in Section 1.1 of the Loan Agreement is hereby amended and restated in its entirety as follows:

"**Release Price**" means the amount to be paid to obtain the release of a Unit from the Lien of the Deed of Trust which, for each such Unit, shall be equal to the greater of (x) the Net Sale Proceeds for such Unit, and (y) the amount set forth in the Release Price Schedule for the respective Unit (or, if no Release Price is specified on the Release Price Schedule for a Unit, the amount approved by Lender in its sole discretion).  For purposes of calculating the Release Price, any

1

104323689

SMHG002857

closing credits or sales price concessions will be treated as a gross price reduction rather than a closing expense. If, with respect to any Unit, the Release Price Schedule sets a Release Price that has been reduced by any closing credit, "PPM Credit," sales price concession or other reduction in the gross sale price, then (i) the amount of such credit, concession or other reduction (the "Price Shortfall") must be expressly identified on the Release Price Schedule (such that the Release Price before the application of such Price Shortfall and the amount of the Price Shortfall are each expressly stated on the Release Price Schedule), and (ii) the Release Price for such Unit is not approved by Lender unless the full amount of the Price Shortfall for such Unit is guaranteed by Guarantor pursuant to the Shortfall Guaranty.

3.      The first sentence of Section 2.4.1 of the Loan Agreement is hereby amended and restated in its entirety as follows:

"So long as no Event of Default has occurred and is then continuing, Lender shall make the First Disbursements and shall make other Advances to Borrower from time to time thereafter to pay or reimburse Approved Costs or to repay the Bridge Loan, in each case subject to the provisions of this Section 2.4 and Sections 2.5 and 2.6; provided that at such time as the aggregate amount of all Advances equals $16,500,000.00, Borrower shall utilize fifty percent (50%) of each subsequent Advance to repay the Bridge Loan (only to the extent the same funded Approved Costs), then upon the full repayment of all outstanding amounts under the Bridge Loan all further Advances shall be made to pay or  reimburse Approved Costs."

4.      Exhibit K attached to this Amendment is hereby added to the Loan Agreement as Exhibit K thereto.

5.      All references to "this Agreement" or the "Loan Agreement" in the Loan Documents are hereby amended to mean the Loan Agreement, as amended by this Amendment and as the same may be further amended from time to time.

6.      Summit Mountain Holding Group, L.L.C., a Utah limited liability company ("Guarantor"), has executed and delivered this Amendment as "Guarantor" under the Environmental Indemnity, the Early Release Guaranty, the Shortfall Guaranty and the Recourse Indemnity for the purpose of ratifying and confirming, and does hereby ratify and confirm, the Environmental Indemnity, the Early Release Guaranty, the Shortfall Guaranty and the Recourse Indemnity and confirming, and does hereby confirm, that, notwithstanding that the Loan Documents have been amended by this Amendment, (i) the Environmental Indemnity, the Early Release Guaranty, the Shortfall Guaranty and the Recourse Indemnity remain in full force and effect in accordance with their respective terms and (ii) as of the date hereof, Guarantor has no defense to the enforcement of its obligations and liabilities under the Environmental Indemnity, the Early Release Guaranty, the Shortfall Guaranty or the Recourse Indemnity or any claim or counterclaim against Lender.

2

104323689

7.  Borrower acknowledges that nothing contained herein shall be construed to relieve Borrower from its obligations under the Loan Agreement and the other Loan Documents. Borrower further acknowledges the lien of the Mortgage to be a valid and existing first lien on the Project, and the liens of the Mortgage and other Loan Documents are hereby agreed to continue in full force and effect, unaffected and unimpaired by this Amendment.

8.  Borrower agrees to pay all fees, costs and expenses (including, without limitation, Lender's attorneys' fees and expenses) paid or incurred by Lender in connection with this Amendment.

9.  In the event of any conflict or ambiguity between the terms, covenants and conditions of this Amendment and those of the Loan Agreement and the other Loan Documents, the terms, covenants and conditions of this Amendment shall control.

10.  Except as herein modified and amended, all of the terms, covenants and conditions of the Loan Agreement and the other Loan Documents shall remain in full force and effect and Borrower and Guarantor hereby represent, warrant and covenant that each and every representation and warranty contained in the Loan Documents is (i) true and correct as of the date hereof (except if any such representation is made as of a certain date, then as of such date) and (ii) incorporated herein in full by reference as if fully restated herein in its entirety.

11.  All of the terms, covenants and conditions of the Loan Agreement and the other Loan Documents, as the same may be amended as of the date hereof, remain in full force and effect and Borrower and Guarantor hereby ratify and confirm all of their respective covenants, obligations, duties, liabilities, indemnities and guarantees thereunder.

12.  Borrower represents, warrants and covenants that as of the date hereof: (i) this Amendment, the Loan Agreement and the other Loan Documents are valid, binding and enforceable in accordance with their respective terms and conditions, (ii) there are no offsets, counterclaims or defenses which may be asserted with respect to this Amendment, the Loan Agreement or any of the other Loan Documents, or which may in any manner affect the collection or collectability of the principal, interest and other sums evidenced and secured by this Amendment, the Loan Agreement or any of the other Loan Documents, nor is there any basis whatsoever for any such offset, counterclaim or defense as of the date hereof, (iii) Borrower and Guarantor (and the undersigned representative(s) of Borrower and Guarantor) have full power, authority and legal right to execute this Amendment and to keep and observe all of the terms of this Amendment, the Loan Agreement and the other Loan Documents on Borrower's and Guarantor's part to be observed and performed and (iv) no Default or Event of Default now exists.

13.  The amendments set forth herein are limited precisely as written and shall not be deemed to (a) be a consent to or a waiver of any other term or condition of the Loan Agreement or any of the other Loan Documents or (b) prejudice any right or rights which Lender may now have or may have in the future under or in connection with the Loan Agreement, as amended hereby, or any other Loan Document, as amended hereby.

3

CONFIDENTIAL INFORMATION

SMHG002859

14.     This Amendment may not be modified, amended, waived, changed or terminated orally, but only by an agreement in writing signed by the party against whom the enforcement of the modification, amendment, waiver, change or termination is sought.

15.     This Amendment shall be binding upon and inure to the benefit of Borrower, Guarantor and Lender and their respective successors and assigns.  This Amendment shall, for all purposes, be and constitute a Loan Document.

16.     This Amendment may be executed in any number of duplicate originals and each such duplicate original shall be deemed to constitute but one and the same instrument.

17.     If any term, covenant or condition of this Amendment shall be held to be invalid, illegal or unenforceable in any respect, this Amendment shall be construed without such provision.

18.     This Amendment shall be construed and enforced in accordance with the laws of the State of New York and the applicable laws of the United States of America.

*(signatures appear on the following page)*

4

CONFIDENTIAL INFORMATION                                                                 SMHG002860

IN WITNESS WHEREOF, the parties hereto have duly executed and delivered this Amendment as of the date and year first above written.

**LENDER:**                        **SUMMIT VILLAGE DEVELOPMENT LENDER 1, LLC,** a Delaware limited liability company

By:    Celona Asset Management (USA) Limited, its Class B Manager

By: _____
Name: Max Huang
Title: Authorized Signatory

*(signatures continue on following page)*

S-1

CONFIDENTIAL INFORMATION                                    SMHG002861

**BORROWER:**

**SMHG VILLAGE DEVELOPMENT LLC,**
a Delaware limited liability company

By:    SMHG Investments LLC, a Delaware
limited liability company, its Sole Member

By: _____
Name: Shaun Mulreed
Title: Authorized Signatory

**GUARANTOR:**

**SUMMIT MOUNTAIN HOLDING GROUP,
L.L.C.,** a Utah limited liability company

By:    Summit Revolution LLC, a Delaware
limited liability company, its Sole Member

By: _____
Name: Shaun Mulreed
Title: Authorized Signatory

S-2

104323689

## Exhibit K

### Release Price Schedule

|  | Lot No | BSF | Release Price | Notes |
|---|---|---|---|---|
| **Horizon** | | | | |
| **Reserved** | | | | |
|  | 106 | 1956 | $    246,840.00 |  |
|  | 107 | 1919 | $    512,847.50 | To be satisfied by a PPM Credit of $512,847.50 |
|  | 110 | 1956 | $    514,590.00 |  |
|  | 113 | 1291 | $    168,427.50 |  |
|  | 116 | 1291 | $    413,120.00 |  |
|  | 119 | 1291 | $    413,120.00 |  |
|  | 128 | 1956 | $    438,090.00 |  |
|  | Subtotal | | $  2,707,035.00 |  |
| **Available Units** | | | | |
|  | 102 | 1919 | $    623,675.00 |  |
|  | 105 | 3009 | $    977,925.00 |  |
|  | 108 | 3009 | $    977,925.00 |  |
|  | 109 | 1956 | $    635,700.00 |  |
|  | 112 | 1956 | $    635,700.00 |  |
|  | 114 | 1919 | $    623,675.00 |  |
|  | 115 | 1919 | $    623,675.00 |  |
|  | 117 | 1956 | $    635,700.00 |  |
|  | 118 | 1919 | $    623,675.00 |  |
|  | 121 | 1291 | $    419,575.00 |  |
|  | 122 | 1956 | $    635,700.00 |  |
|  | 125 | 1919 | $    623,675.00 |  |
|  | 127 | 1291 | $    419,575.00 |  |
|  | 129 | 1291 | $    419,575.00 |  |
|  | 130 | 1919 | $    623,675.00 |  |
|  | 131 | 3009 | $    977,925.00 |  |
|  | Subtotal | | $ 10,477,350.00 |  |
| Total Horizon Release Price | | | $ 13,184,385.00 |  |

Exhibit K-1

104323689

CONFIDENTIAL INFORMATION

SMHG002863